United States District Court
Southern District of Texas
**ENTERED**
September 13, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARCUS E ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00203 |
| | § | |
| INDIVIOR INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

On September 3, 2021, Plaintiff Marcus Adams, proceeding *pro se*, filed a complaint against Indivior Inc. and Indivior PLC ("Indivior"). (D.E. 1). Plaintiff filed an Amended Complaint on January 5, 2022. (D.E. 32). Pending is Indivior's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff's Response, Indivior's Reply and Plaintiff's Sur-Reply. (D.E. 33; D.E. 34; D.E. 35 and D.E. 36). This case has been referred to the undersigned for case management pursuant to 28 U.S.C. § 636. (D.E. 3). For the reasons discussed below, the undersigned recommends Indivior's Motion be **GRANTED** and this case be **DISMISSED**. (D.E. 33).

## I.    BACKGROUND

The parties agree the drug at issue, Suboxone, is prescribed for treatment of opioid dependence. (D.E. 32, Pages 1-2, 6 and D.E. 33, Page 3). On July 3, 2006, Plaintiff alleges he sustained injuries after a motorcycle accident in Virginia and subsequently was prescribed, and became addicted to, Oxycontin. (D.E. 32, Page 8). Plaintiff further alleges

1 / 18

that sometime in 2007, while still in Virginia, he "first used Suboxone tablets" to treat his opioid addiction.  (D.E. 32, Page 8).  Plaintiff alleges he then became addicted to Suboxone and was given Tramadol "to help with the addiction" but it did not, so he "locked himself in his bedroom to try and kick the addiction."  (D.E. 32, Page 8).  Plaintiff further alleges "[b]eing addicted to Suboxone is far worse than Oxycontin, Vicodin and/or Tramadol" because the withdrawal symptoms last longer and it can cause breathing problems even when using the prescribed dose.  (D.E. 32, Page 2).

After relocating to Texas in April 2011, Plaintiff alleges he was prescribed Hydrocodone by Dr. Mario Martinez and subsequently became addicted to it.  (D.E. 32, Page 8).  Plaintiff then alleges he "began to look for a way to get off of the Hydrocodone and again was told to use the opiate blocker Suboxone…and was told that [he] most likely didn't take the Suboxone long enough [previously] to get proper results."  (D.E. 32, Page 8).  On August 24, 2016, Plaintiff was prescribed Suboxone by a physician.  (D.E. Pages 8 and 9).[1]  At some point, Plaintiff "switched doctor[s] because of the length of time the other doctor[s] had Plaintiff using Suboxone [and] Dr. Raul R. Capitaine did exactly the same

_____

[1]Plaintiff lists several physicians in his complaint as prescribing Suboxone but it is unclear when each prescribed it or any details about the prescriptions, such as dose or length of treatment.  (D.E. 32, Page 9).  However, it is clear that Plaintiff was prescribed Suboxone by a physician.  (D.E. 32, Pages 6 and 8-9) (Plaintiff pleaded Suboxone is a "very powerful by prescription only medication[] meant to treat opioid addictions.")  Further, Plaintiff pleaded that "[t]he doctor Daniela Badea-Mic, MD, had Plaintiff on Suboxone for almost a year…"  (D.E. 32, Page 9).

thing so the Plaintiff had to stop Suboxone and try to come off this himself."  (D.E. 32, Page 9).[2]

On September 3, 2021, Plaintiff initiated this products liability action under Texas law against Indivior seeking monetary damages, alleging he "became aggressively addicted" to Suboxone.  (D.E 1).[3]  The Court has jurisdiction over this case involving diverse parties pursuant to 28 U.S.C. § 1332.  On November 22, 2021, Indivior filed a Motion to Dismiss which was denied as moot by the undersigned on December 9, 2021 as Plaintiff was given "one, final opportunity to amend his complaint."  (D.E. 24, D.E. 27 and D.E. 31).

Plaintiff filed an Amended Complaint on January 5, 2022, including product liability claims for strict liability, breach of warranty, negligence and gross negligence.  On February 7, 2022, Indivior moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.E. 33).[4]

---

[2] The Amended Complaint does not state Plaintiff's prescribed dosage or how often or how long Plaintiff regularly ingested Suboxone.  However, he does plead that "[t]his action is to recover damages due to the aggressive addiction of Suboxone sublingual strips containing (Buprenorphine and Naloxone) 8mg/2mg."  (D.E. 32, Page 2).

[3] Plaintiff previously filed suit against Indivior in this Court on October 7, 2020 based largely on the same facts but asserting different causes of action. Case No. 2:20-mc-882 (IFP) and Case No. 2:20-cv-252.  On January 8, 2021, at Plaintiff's request and after a Motion to Dismiss had been filed by Indivior, the case was dismissed without prejudice.  (Case No. 2:20-cv-252, D.E. 5; D.E. 24; D.E. 25 and D.E. 27, Pages 5 and 8-9).

[4] On March 17, 2022, Plaintiff filed a Second Amended Complaint which was struck by the undersigned the same day as Plaintiff did not seek leave to file it and Plaintiff had previously been given one, final opportunity to amend his complaint and he did so.  (D.E. 37 and D.E. 38).

## II.  12(b)(6) MOTION STANDARD OF REVIEW[5]

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action

for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In

deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts

all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *In*

---

[5]In his response, Plaintiff asserts fraud claims which would be subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff "state with particularity the circumstances constituting the fraud."  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir.2003) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 179 (5th Cir.1997)).  However, Plaintiff does not assert these fraud allegations as a cause of action in his amended complaint and therefore, they are not before this Court.

Also in his response, Plaintiff states his pleading "contains a detailed factual account of Defendants' illegal practices which establish their liability for the violations of both the FTC Act and Telemarketing Sales Rule."  (D.E. 34, Page 11).  In his Amended Complaint, Plaintiff also pleads, "According laws known as the Lincoln Law (False Claim Act), is Federal and protects United States Citizens from fraudulent companies who defraud the people governed under the Lincoln Law." [sic] (D.E. 32, Page 2).  In his sur-reply, Plaintiff states "[t]he Federal Tort Claims Act (FTCA) sets forth procedures for presenting and resolving administrative monetary claims for personal injury, property damage, or death arising from the alleged negligence of officers and employees of the Office of Personnel Management acting in the scope of their official duties." (D.E. 36, Page 1).  Plaintiff also references the Private Securities Litigation Reform Act of 1995. (D.E. 36, Page 2).  However, Plaintiff did not assert any of these as claims for relief in his Amended Complaint and therefore, they are also not before this Court.  (D.E. 35, Pages 3-4).  Additionally, in his sur-reply, Plaintiff states that he is not bringing any claims under the False Claims Act.  (D.E. 36, Page 2).  Further, "Texas courts 'examine the substance of [the] underlying claim, rather than how [the plaintiff] couched the claim" when determining "whether an action falls under the products-liability definition." *Pavlat v. Deere & Co. et al*, No. H-19-325, 2019 WL 1383734, at *2 (S.D. Tex. Mar. 6, 2019) (citation omitted).

Further, the undersigned recommends Plaintiff not be granted leave to again amend his complaint.  Plaintiff was given "one, final opportunity to amend his complaint" and he has done so.  (D.E. 31).  Plaintiff was specifically cautioned that, "[a]ny claims which Plaintiff wishes to raise must be stated in the amended complaint.  If a claim is not included in the amended complaint, it is not before the Court.  Plaintiff is admonished that he will not be given any additional opportunities to amend this case.  This is Plaintiff's final opportunity to amend his complaint."  (D.E. 31).

*re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).  To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.* (citation omitted).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" to be entitled to the assumption of truth.  *Id.* at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  Under Rule 8(a)(2), plaintiffs are not required to include "detailed factual allegations," but at the same time "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation" is needed.  *Iqbal*, 556 U.S. at 678.  "To survive a Rule 12(b)(6) motion to dismiss, the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, 'raise a right to relief above the speculative level.'"  *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (citing *Twombly*, 550 U.S. at 555).

When dealing with cases where the plaintiff proceeds *pro se*, it is well-established that the *pro se* plaintiff's complaint is held to less stringent standards than formal pleadings drafted by lawyers. *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981) (citation omitted).  While *pro se* plaintiffs are entitled to more liberal constructions of their pleadings by courts, the *pro se* plaintiff still must comply with the Federal Rules of Civil Procedure, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the motion to dismiss." *Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citation omitted).

## III.   ANALYSIS

### A.   Relevant Law

Products liability law in Texas is governed by statute and is defined as "any action against a manufacturer or seller for recovery of damages arising out of personal injury…allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories."  Tex. Civ. Prac. & Rem.

Code § 82.001(2). "Texas law recognizes three types of product[s] liability claims: (1) defective design, (2) defective manufacture, and (3) inadequate warning or failure to warn." *Castillo v. Boston Sci. Corp.*, No. 7:20-cv-123, 2020 WL 5608510, at *3 (S.D. Tex. Sept. 18, 2020) ("It is customary and proper for a plaintiff to plead strict liability and negligence as alternative theories…" with strict liability looking at the product itself to determine if it is defective and negligence looking at the acts of the manufacturer and reviewing its level of ordinary care in design and production) (citations omitted).  Here, Plaintiff conclusory pleads all three product liability claims under theories of strict liability, breach of warranty and negligence.  (D.E. 32, Pages 9-16).

To plead a claim for design defect under Texas law, a plaintiff must allege the product was defectively designed rendering it unreasonably dangerous, a safer alternative design existed and the defect was the producing cause of the plaintiff's alleged injury. *Moncibaiz v. Pfizer, Inc.*, 532 F.Supp.3d 452, 458, 460 (S.D. Tex. 2021) (citations omitted); *Castillo*, 2020 WL 5608510, at *4 ("Such safer alternative design must also be economically and scientifically feasible and cannot be a substantially different product.") (internal quotations and citations omitted).  Texas law provides "that prescription drugs are neither defective nor unreasonably dangerous…so long as they are marketed according to their purpose and accompanied by proper instructions and warnings."  *Moncibaiz*, 532 F.Supp.3d at 460 (citations omitted). ("[S]ome products are quite incapable of being made safe for their intended and ordinary use," and having an "unavoidable high degree of risk" is necessary to provide beneficial products including drugs and vaccines which cannot

legally be sold except to physicians or under the prescription of a physician).  Further, "prescription drugs are not unreasonably dangerous provided that they are properly prepared and include adequate directions and warnings." *Id.* (citation omitted).

In Texas, a manufacturing defect results when a product deviates "from the specifications or planned output in a matter that renders it unreasonably dangerous." *Fearrington v. Boston Sci. Corp.*, 410 F.Supp.3d 794, 802 (S.D. Tex. 2019) (citation omitted).  "A plaintiff must prove that the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries." *Id.* (A plaintiff must allege facts showing defendant deviated from the intended design to plausibly allege a manufacturing defect.) (citation omitted).

For failure to warn claims, Texas law requires a plaintiff to prove "(1) a risk of harm is inherent in the product or which may arise from the intended or reasonably anticipated use of the product; (2) the product suppliers actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed; (3) the product contains a marketing defect; (4) the absence of a warning renders the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn must constitute a causative nexus in the product user's injury." *Castillo*, 2020 WL 5608510, at *6 (citations omitted).

Additionally, "[w]here the crux of the suit is based on a failure to adequately warn, the learned intermediary doctrine may apply to strict liability, negligence, misrepresentation and breach of warranty claims." *Ebel v. Eli Lilly and Co.*, 536 F.Supp.2d

8 / 18

767, 773 (S.D. Tex. 2008) (citations omitted); *Fearrington.*, 410 F.Supp.3d at 801 (Applying the learned intermediary doctrine in case alleging marketing defect).  This defense applies where the pharmaceutical company selling prescription drugs has adequately warned the prescribing physician of a drug's potential risks, who then acts as a learned intermediary between the manufacturer and consumer when prescribing the drug. *Ebel*, 536 F.Supp.2d at 773 (citation omitted); *Pustejovsky v. Pliva, Inc.*, 623 F.3d 272, 276 (5th Cir. 2010) ("Under the doctrine, the manufacturer may rely on the doctor—the learned intermediary—to pass on its warnings.")  Because the consumer does not have access to the medication absent a prescription from a physician, the drug manufacturer need only warn the physician.  *Id*. (citation omitted); *Gonzalez v. Bayer Healthcare Pharm., Inc.*, 930 F.Supp.2d 808, 812-13 (S.D. Tex. 2013) (The Texas Supreme Court held that "[a]s a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient.  His is the task of weighing the benefits of any medication against its potential dangers.  The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative.") (citation omitted).  "[I]n selling prescription drugs, [pharmaceutical companies] are required to warn only the prescribing physician."  *Id*. (citation omitted).  To avoid the application of this defense after it is established a plaintiff received the medication through a physician who was adequately warned of potential risks, a Plaintiff must demonstrate the warning provided to the physician was inadequate or misleading and the doctor was not otherwise informed of the risks of the prescription medication.  *Id*. (citations omitted).

However, a manufacturer may still be held liable for injuries sustained by the plaintiff if (1) the warning to the physician was inadequate; and (2) the failure to warn was a producing cause of the plaintiff's condition or injury. *Castillo*, 2020 WL 5608510, at *6 (citations omitted). "To overcome the learned intermediary doctrine, plaintiffs must show that, but for the inadequate warning, their doctors would have recommended different treatment, or provided additional warnings that would have led plaintiffs to withhold consent." *Id*. (citation omitted); *Gonzalez*, 930 F.Supp.2d at 812-13. ("While the learned intermediary doctrine shifts the manufacturer's duty to warn from end user to intermediary, the plaintiff's burden of proof remains the same, i.e. to prove the product's warning was inadequate…[and] the inadequate warning was the producing cause of plaintiff's injuries.") (citation omitted). "A plaintiff's pleadings are insufficient when they do not identify the warning that her doctor received, allege how it was inadequate, demonstrate that a different warning would have changed the doctor's actions, or otherwise include facts necessary to allege the failure to warn caused her injury." *Castillo*, 2020 WL 5608510, at *7 (citations omitted); *Gonzalez*, 930 F.Supp.2d at 813 ("[W]hen the prescribing physician is aware of the product's risks and decides to use it anyway, any inadequacy of the product's warning, as a matter of law, is not the producing cause of the patient's injuries.") (citations omitted).

Additionally, "[u]nder the Texas products liability statute, a plaintiff who sues a pharmaceutical manufacturer under a failure to warn theory must also rebut a presumption that the manufacturer is not liable if the label was approved by the FDA." *Johnson v.*

*Novartis Pharm. Corp.*, 845 F. App'x 305, 310 (5th Cir. 2021) (citing Tex. Civ. Prac. & Rem. Code Ann. § 82.007(a)(1) which provides that "[i]n a products liability action alleging injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant… [is] not liable with respect to the allegations involving failure to provide adequate warnings or information if the warnings or information that accompanied the product in its distribution…were approved" by the FDA); *Gonzalez*, 930 F.Supp.2d at 818-19 (Finding plaintiffs had failed to allege any facts that would rebut the presumption that the pharmaceutical company was not liable as a matter of law because it used FDA approved warnings). The statute further provides for five ways to rebut this presumption, including that defendant perpetrated a fraud on the FDA or defendant marketed and/or prescribed the drug for an indication not approved by the FDA. *Johnson*, 845 F. App'x at 310. However, the United States Court of Appeals for the Fifth Circuit has held that "Texas's fraud-on-the-FDA rebuttal is preempted [by federal law] unless the FDA itself finds fraud." *Id.* (citation omitted).

"Where a products liability claim is based on negligence, the plaintiff must demonstrate that (1) the manufacturer owed a legal duty to the plaintiff; (2) the manufacturer breached that duty; (3) the plaintiff suffered an injury as a result of the breach; and (4) the defendant's actions were a proximate cause of the injury." *Castillo*, 2020 WL 5608510, at *7 (citations omitted). To satisfy the causation element in a failure to warn claim, a plaintiff must identify the inadequate warning and state facts suggesting

defendant's failure to warn caused plaintiff's injuries. *Id*. To satisfy the causation element in a manufacturing defect claim, a plaintiff must plead that the product deviated in its construction or quality from the specifications so that it was rendered unreasonably dangerous. *Id*. at *8 ("Whether a plaintiff seeks recovery based on negligence or strict liability, the burden is on the plaintiff to prove that the injury resulted from a defect in the product" when alleging a design or manufacturing defect) (citation omitted). To satisfy the causation element in a design defect claim, a plaintiff must plead that the defectively designed product caused his injuries. *Id*. Further, the Texas Supreme Court has held that "[n]egligent design *and* manufacturing claims are predicated on the existence of a safer alternative design for the product" and "[a]bsent an alternative design, a claim for negligent design or manufacturing fails as a matter of law." *Id*. at *9.

### B.   Plaintiff's Amended Complaint

Indivior asserts all of Plaintiff's claims should be dismissed because he failed to support each cause of action with sufficient facts. Additionally, Indivior argues Plaintiff has failed to show Suboxone was defective or unreasonably dangerous and therefore, his claims are all deficient. Indivior also asserts Plaintiff is precluded from moving forward with any failure to warn or breach of warranty claims because of the learned intermediary doctrine as it is undisputed that Plaintiff was prescribed by Suboxone by a physician. In his response and sur-reply, Plaintiff does not specifically respond to Defendant's arguments, instead generally asserting that he has pleaded enough facts to defeat a motion to dismiss. Further, Plaintiff argues Indivior has been liable in previous cases throughout

the United States and, accordingly, Indivior is liable here. Plaintiff also responds he was "less definite with his damages simply because of motions of discovery. Everything the Defense needs to know will be presented at that time." (D.E. 34, Page 3). Lastly, Plaintiff asserts Suboxone is "defective" because it "doesn't work" and it "should be banned from the market and destroyed" "because of its addictive nature." (D.E. 36, Pages 3-4).

The undersigned agrees with Indivior and recommends Plaintiff's amended complaint is a conclusory, formulaic recitation of the elements of his proposed causes of action that fail to meet the plausibility standard of *Iqbal and Twombly* under Rule 12(b)(6). Even under the liberal construction given to *pro se* plaintiffs' pleadings, Plaintiff's allegations are at best vague, conclusory and entirely lacking in factual support. While it is clear Plaintiff is attempting to raise product liability claims, he fails to sufficiently support any of these allegations in his amended complaint.

Plaintiff lists his causes of action and conclusory asserts the Suboxone was defective or not reasonably safe. However, Plaintiff does not provide any further facts in support other than to plead he was prescribed Suboxone at some point, subsequently became addicted to Suboxone and then had withdrawal symptoms when he stopped taking it. No other details are included, such as how Suboxone is defective or not reasonably safe or whether there are safer alternative designs. To plead either a design defect or manufacturing claim, Plaintiff must allege safer alternative designs for the product, not alternatives to using the product, to defeat a motion to dismiss. *Castillo*, 2020 WL 5608510, at *6, *9 ("For a design defect to exist under both strict liability and negligence

theories, Plaintiff must allege a "safe alternative design" and "[a]bsent an alternative design, a claim for negligent design or manufacturing fails as a matter of law.") (citations omitted); *Fearrington*, 410 F.Supp.3d at 804 (Plaintiff needs to plead facts that the product could have been designed in a safer manner and such alternative designs were economically and technologically feasible, not the available of alternative treatments) (citation omitted). Additionally, Plaintiff fails to plead how Indivior deviated from original specifications when producing Suboxone making it unreasonably dangerous or that the defect was the cause of his injuries. *Castillo*, 2020 WL 5608510, at *8; *Fearrington*, 410 F.Supp.3d at 802 (Plaintiff failed to allege in any detail the product's intended design or specification, how the manufacture of the product deviated from that design or specification or how such deviation caused injury and therefore, plaintiff's allegations were impermissibly vague and conclusory).

Further, Plaintiff does not address what warnings he was given by his prescribing physician, what warnings were included when he received his prescription or what warnings his prescribing physician received from Indivior nor does he plead any allegations as to how these warnings were inadequate or whether they were approved by the FDA. *Castillo*, 2020 WL 5608510, at *6; *Johnson*, 845 F. App'x at 310. Additionally, Plaintiff has failed to plead how a different warning would have changed his physician's actions and he has also failed to otherwise include facts necessary to allege the failure to warn caused him injury. *Id.*; *Ebel*, 536 F.Supp.2d at 772-73; *Gonzalez*, 930 F.Supp.2d at 819 ("Because Plaintiff does not allege that the warning to her healthcare provider was

inadequate nor identify the warnings or materials which her doctor received and reviewed, much less demonstrate that the doctor would not have prescribed [the medication] if the warning had been different, and does not allege facts necessary to show causation, she fails to satisfy *Twombly* and *Iqbal* as a matter of law.") (citations omitted); *Fearrington*, 410 F.Supp.3d at 801.

Plaintiff has also failed to allege what warranties were made to his prescribing physician nor does he state how they were breached. *Gonzalez*, 930 F.Supp.2d at 819 (Applying the learned intermediary doctrine to a plaintiff's breach of warranty claims and granting dismissal where plaintiff failed to allege specific warranties or how they were breached "leaving only 'an unadorned, the-defendant-unlawfully-harmed-me-accusation'") (citation omitted); *Fearrington*, 410 F.Supp.3d at 806 (Plaintiff's breach of warranty claim was dismissed because the plaintiff did not plead facts establishing the defendant made warranties to plaintiff's physicians that were subsequently breached).

It is unclear even as to the basic facts of the case such as which physician prescribed Plaintiff Suboxone, how long he took it and what his dose was. Additionally, while Plaintiff alleges he suffered physical injury, he does not provide any details in support other than to plead that he became addicted to Suboxone at some point after taking it for an unstated amount of time and subsequently went through withdrawal for an unknown period.

Plaintiff fails to identify with sufficient specificity the alleged conduct giving rise to liability or any harm allegedly suffered. In short, Plaintiff fails to plead claims under

strict liability, breach of warranty or negligence. *Gonzalez*, 930 F.Supp.2d at 818 (As plaintiff failed to plead negligence, the plaintiff cannot bring a claim for gross negligence as "one's conduct cannot be grossly negligent without being negligent.") (citation omitted). Therefore, the undersigned recommends Plaintiff's complaint be dismissed as it fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under Fed. R. Civ. P. 15(a)(2), leave to amend should be freely given "when justice so requires." However, leave to amend may be denied for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [or] futility of amendment ...." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, the record does not support allowing further amendment. Plaintiff previously dismissed an earlier case based on the same allegations, although he pleaded different causes of action, after Indivior filed a motion to dismiss. In this case, the undersigned denied Indivior's first motion to dismiss, giving Plaintiff leave to file an amended complaint. (D.E. 31). Plaintiff was warned he should include all claims in the amended complaint as he would not be given additional opportunities to amend his case. (D.E. 31).[6] While Plaintiff requests leave to amend, he provides no basis or detail for the requested amendment and does not identify what

---

[6]Plaintiff was advised that "[a]ny claims which [h]e wishes to raise must be stated in the amended complaint. If a claim is not included in the amended complaint, it is not before this Court. Plaintiff is admonished that he will not be given any additional opportunities to amend this case. This is Plaintiff's final opportunity to amend his complaint." (D.E. 31, Page 1).

additional facts he would provide in an amended complaint.  (D.E. 36, Page 5).  Lastly, from the limited information provided in Plaintiff's amended complaint, it appears none of Plaintiff's claims are legally cognizable and would fail as a matter of law, making an amendment futile.

## IV.    RECOMMENDATION

For the reasons stated above, the undersigned recommends Plaintiff's allegations are insufficient to survive Defendant's Motion to Dismiss.  Accordingly, the undersigned recommends to the Court that Defendant's Motion be **GRANTED** and this case be **DISMISSED**.  (D.E. 33).

ORDERED on September 13, 2022.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).